Green, Judge,
delivered the opinion of the court:
Pursuant to an advertisement made and specifications issued by the defendant, the plaintiff made a bid for removing a wreck of a floating dry-dock from St. Thomas Harbor, Virgin Islands. The plaintiff’s bid was accepted, the work was completed one hundred seventy-six days after the contract expiration date, and the plaintiff was paid the contract price less liquidated damages at the rate of $25 a day as provided in the contract for the period of the delay. After-wards upon review, $925 was paid to the plaintiff because the Chief of Engineers recommended that plaintiff be allowed thirty-seven days additional time for completion of the work and that $925 of the liquidated damages be remitted.
The items of plaintiff’s claim are as follows:
Liquidated damages for 139 days-$3,475.00
Cost of removing ballast tanks and bottom frames_ 4, 987. 56
Expenses incurred while barge was transporting dredging material for defendant under defendant’s prior contract- 738.72
Contributory items of expense caused by plaintiffs work being thrown into the molasses season_ 8, 609.36
Total_17, 810.64
It will be observed the plaintiff is claiming that all of the deduction on account of liquidated damages for delay in the performance of the contract should be remitted and that it should be paid the full contract price. This claim is closely connected with the second item which is based on the cost of removing the ballast tanks and bottom frames. It is contended by plaintiff that the specifications did not make sufficiently clear the number of ballast tanks or the structure of the bottom frames of the dry-dock. Conceding for the purpose of the argument that the plans and specifications were not clear in this respect, this would furnish no basis *546 for recovery on the part of the plaintiff. The defendant, was not contracting for the construction of a dry-dock and it did not undertake to give complete specifications as to the-construction of the dry-dock which was to be removed. The specifications described the dry-dock giving its length,, height, width, and certain information concerning it. But it was also said in the specifications that the description was only approximate “and that no claim shall be made against the United States on account of any excess or deficiency, absolute or relative, in the same. No allowance-will be made for the failure of a bidder or of the contractor to estimate correctly the difficulties attending the execution of the work.”
As a further warning it was stated:
Bidders are expected to visit the wreck and ascertain for themselves its exact location and condition and make their bids accordingly, as the accuracy of the-above description is not guaranteed.
Plaintiff was notified that there were ballast tanks but-for some reason, as stated in a letter from plaintiff to the-contracting officer, expected to find only four although there were in fact ten of the tanks. The map of the wreck which went with the specifications showed in a general way the-location of the ballast tanks and the structure of the frame. Whether the number of the tanks was made plain we need not determine as under the contract this was for the plaintiff to find out for itself or take the risk. There was no-misrepresentation of conditions or any statement that would tend to mislead the plaintiff. The member of plaintiff’s firm who was a diver made a perfunctory examination of' the wreck. That it did not disclose the number of ballast tanks was the fault of plaintiff and not of defendant.
The contracting officer, however, took a lenient view of plaintiff’s contract and when plaintiff asked for a supplemental agreement allowing thirty more working days for the completion of the work the contracting officer requested authority to make a change order involving an increase of thirty-seven calendar days in plaintiff’s completion time and this order was subsequently authorized. December 15, 1931, the contracting officer advised the plaintiff that he had concluded to accept its offer but by that time the plain *547 tiff bad run into other difficulties and instead of accepting the supplemental agreement, presented a detailed claim for $18,735.64 as shown in Finding 10. It is contended by defendant that plaintiff was bound by the supplemental agreement after it had received notice from the contracting officer that it was approved, especially as the Government acted upon it in making payment under the contract and in its final payment allowed plaintiff thirty-seven days additional time. But here again we think it is not necessary to determine whether plaintiff Avas bound by the terms of the supplemental agreement. The agreement was an effort of the contracting officer to be scrupulously fair and even indulgent to plaintiff because of the fact that it had found the job was more extensive than it had anticipated and because he found that no damage or loss had resulted to anyone. Later he recommended a payment to plaintiff of the aggregate of the liquidated damages and the costs incurred in removing the ballast tanks and other obstructions. But this did not alter plaintiff’s legal obligations, and we can find no legal foundation for a recovery in plaintiff’s lack of knowledge of the manner in which the dry-dock was constructed. The claim for an allowance on account of extra expense incurred by reason of plaintiff having been unable to obtain a barge which appears to be needed for the removal of dredging material also has no legal basis. The fact that defendant contracted for some use of the barge that plaintiff wanted creates no liability. There was no obligation on the part of defendant to furnish the plaintiff with the means of completing its contract and it was not bound to refrain from hiring a barge because plaintiff might want it. Nor does the fact that the barge was subsequently needed for the transport of molasses relieve the plaintiff from the obligation of its contract. The contract provided that plaintiff should furnish the necessary plant and materials for its performance.
The findings show that plaintiff agreed to complete the job in one hundred days, the completion date being November 19,1931, but did not actually finish it until one hundred seventy-six days thereafter. In other words, plaintiff exceeded by more than five months the time for completing a work estimated to require only a little over three. Plaintiff *548 did not even engage the barge until about two weeks after the time fixed for the completion of the contract and at that time it had been hired for a short period to transport certain dredging materials for the defendant. A considerable part of plaintiff’s delay was caused by the breaking of its cables and for this defendant was not in any way responsible. Without going further into the details of the evidence, we think it clear that the defendant is not responsible for any of the delays which occurred in the completion of the work and that the most of these delays were due to plaintiff’s failure to make proper preparation and to proceed promptly and efficiently with the work.
Plaintiff’s petition must be dismissed and it is so ordered.
Whaley, Judge; Williams, Judge', Littleton, Judge', and Booth, Chief Justice, concur.